UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MARY SUE SHIELDS                                                                                   PLAINTIFF

V.                                                                   CIVIL ACTION NO. 3:23-CV-516-DPJ-ASH

MISSISSIPPI DEPARTMENT OF CORRECTIONS, et al                           DEFENDANTS

ORDER

Pro se Plaintiff Mary Sue Shields, an inmate currently housed at Delta Correctional Facility (DCF) in Greenwood, Mississippi, sued Mississippi Department of Corrections, Major Ramona Matthews-Ellis, Commissioner Burl Cain, Deputy Commissioner McDonald, and Deputy Commissioner Mallett under 42 U.S.C. § 1983. Plaintiff is proceeding *in forma pauperis* (IFP). *See* Order [12]. The Court, having liberally construed Plaintiff's Complaint [1], Amended Complaint [8], and Responses [18, 19], finds that certain claims should be dismissed; Shields will be given a final opportunity to allege facts supporting one claim.

I.     Background

   A.     Procedural History

Shields filed this lawsuit on August 9, 2023. Compl. [1]. Because she did not pay the filing fee, the Court prompted her to do so or file an application to proceed *in forma pauperis*. Order [4]. Shields responded by filing an IFP application [7] and a motion to amend [8], which the Court construed as an Amended Complaint. Order [14] (granting motion to amend). Needing additional information about her claims, the Court ordered Shields to file a response, Order [15], and entered a Show-Cause Order [17] when she failed to respond. On April 8, 2024, Shields filed a Response [18], then filed a second Response [19] on May 2, 2024. All four filings [1, 8, 18, 19] were considered by the Court.

B.     Facts Alleged

Stated simply, Plaintiff takes issue with three Rule Violation Reports (RVR) and their consequences. Compl. [1] at 5; Resp. [18] at 1–2.

The first RVR (issued on March 16, 2022) and the second RVR (issued on April 26, 2022) were for the same incident. Resp. [18] at 1. Plaintiff says that she "was removed from [her] job" and taken to the maximum-security unit at Central Mississippi Correctional Facility (CMCF). *Id*. She also complains that she lost the privilege of wearing "green/white pants." *Id*. MDOC ultimately found Plaintiff not guilty and removed these RVRs from her file. *Id*. Plaintiff believes that her constitutional rights were violated because Defendants Cain, McDonald, and Mallett failed to follow MDOC Standard Operating Policy (SOP) #18-0101 or #19-01-01. *Id*.; Am. Compl. [8] at 1.

Then on April 10, 2023, Plaintiff received a third RVR written by Defendant Matthews-Ellis while housed at DCF. Resp. [18] at 1. MDOC initially transferred Plaintiff to DCF restricted housing and then moved her to Walnut Grove Correctional Facility (WGCF). *Id*. at 2 (stating she was at WGCF from April to August). WGCF is an all-male maximum security prison, *id.*, and Shields explains that she was "placed in . . . [the] Security Threat Group program." Compl. [1] at 5. MDOC later transferred her to a maximum-security unit at CMCF. Resp. [18] at 2. That RVR was dismissed on June 5, 2023. *Id.* According to Shields, "All of the defendant violated the Plaintiff's constitutional rights by placing her life in danger at an all male maximum security prison. And by disgracing her character!" *Id*. (unaltered).

As relief, Plaintiff wants to be housed in general population, Compl. [1] at 5; reimbursed for court costs, *id.*; granted an injunction against Defendant Ellis "so she can't do it again," *id.*;

2

reclassified to A-custody, *id.*; "upgrade[d] to green/white [pants]," Resp. [18] at 2; and "allowed to work at any job she . . . qua[l]ifies for," *id.*

II.     Standard

The Prison Litigation Reform Act (PLRA) applies to prisoners proceeding IFP and provides that "the court shall dismiss the case at any time if the court determines that . . . (B) the action or appeal – (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Because Plaintiff proceeds IFP, her Complaint is subject to the case-screening procedures set out in the PLRA.

III.    Analysis

Plaintiff sued Defendants under 42 U.S.C. § 1983. To state a claim under that statute, she "must allege facts showing that a person, acting under color of state law, deprived the plaintiff of a right, privilege or immunity secured by the United States Constitution or the laws of the United States." *Bryant v. Mil. Dep't of Miss.*, 597 F.3d 678, 686 (5th Cir. 2010).

    A.     Due-Process Claims

Shields says Defendants violated her constitutional rights, presumably by denying due process relating to her RVRs. To invoke the Due Process Clause, Plaintiff must have a protected liberty interest at stake. And, in the prison context, a constitutionally protected liberty interest is "generally limited to freedom from restraint which . . . imposes atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

**Clothes and classifications.** Shields claims an interest in the privileges of wearing green/white pants, being assigned a particular job, and receiving a certain custody classification.

3

But "[p]risoners have no recognizable due process liberty interest in their custodial classification or various inmate privileges."  *Toson v. Taylor*, No. 23-10793, 2023 WL 8271965, at *1 (5th Cir. Nov. 30, 2023) (citing *Butts v. Martin*, 877 F.3d 571, 580 (5th Cir. 2017)).  Thus, "the loss of various inmate privileges and a negative adjustment in [the prisoner's] custodial status" are not "atypical and significant hardship[s]" that violate a prisoner's due-process rights.  *Id.*  (quoting *Sandin*, 515 U.S. at 484); *see also Watkins v. Lnu,* 547 F. App'x 409, 410 (5th Cir. 2013) (holding loss of privileges for commissary, visitation, and telephone did not implicate inmate's liberty interest); *Taylor v. Stanciel*, 202 F. App'x 662, 663 (5th Cir. 2006) (noting "loss of privileges for 30 days does not give rise to a protected liberty interest").

*Placement.*  Next, Shields says that she was placed in restricted housing at DCF for one week.  Resp. [18] at 2.  Then she was allegedly housed from April to August 2023 at WGCF, an "all[-]male maximum security prison," *id.*, and "placed in . . . [the] Security Threat Group program," Compl. [1] at 5.  Finally, she claims she was moved to CMCF from August until December 2023.  Resp. [18] at 2.

Restricted or segregated confinement violates due process when it "imposes atypical or significant hardship" as it relates to the "ordinary incidents of prison life."  *LaVergne v. Stutes*, 82 F.4th 433, 436 (5th Cir. 2023) (citing *Sandin,* 515 U.S. at 484).  The "courts should apply a nuanced analysis looking at the length and conditions of confinement on a case-by-case basis to determine whether they give rise to a liberty interest."  *Carmouche v. Hooper*, 77 F.4th 362, 367 (5th Cir. 2023) (citing *Sandin*, 515 U.S. at 484–85; *Wilkerson v. Goodwin*, 774 F.3d 845, 855–56 (5th Cir. 2014)).

Shields asserts no facts about restricted housing and maximum security in her pleadings that present a viable constitutional violation.  She asserts that she was moved between various

4

facilities over the course of eight months and, at times, placed in segregation.  Because she does not describe any type of condition that implicates an "atypical or significant hardship" while on lockdown, Shields does not state a due-process claim for her time in segregation or lockdown. *See Sandin*, 515 U.S. at 484; *Bailey v Fisher*, 647 F. App'x 472, 476 (5th Cir. 2016) (suggesting "18-19 months of segregation under even the most isolated of conditions may not implicate a liberty interest") (cited in *Damond v. City of Alexandria*, No. 24-30537, 2025 WL 1233621, at *4 (5th Cir. April 29, 2025)).

The one claim that might present a liberty interest is the claim that she was housed in a male prison.  But the pleadings so far lack any information that would allow the Court to conclude whether "atypical and significant hardships" existed.  *Sandin,* 515 U.S. at 484.  Shields will be given one final opportunity to amend her complaint and plead facts specific to that allegation.

***Grievances.***  Nor does Plaintiff have a federally protected liberty interest in having a prison grievance resolved to her satisfaction or investigated.  *See Morris v. Cross*, 476 F. App'x 783, 785 (5th Cir.  2012) (affirming dismissal of inmate's claim alleging inadequate investigation of grievance) (citing *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998)).  Any claim that Plaintiff tries to assert about how her grievances of the disciplinary actions were handled is meritless for this reason.

Even assuming Sheilds stated a liberty interest in her grievances, she premises her claim in part on Defendants' alleged failure to follow standard operating procedures.  But "any failure by prison officials to comply with their own regulations 'does not establish a violation of due process, because constitutional minima may nevertheless have been met.'" *Staples v. Keffer*, 419 F. App'x 461, 463 (5th Cir. 2011) (quoting *Jackson v. Cain*, 864 F.2d 1235, 1251–52 (5th Cir.

5

1989)); *see also Guiden v. Wilson,* 344 F. App'x 980, 981 (5th Cir. 2009) ("A violation of a prison rule by itself is insufficient to set forth a claim of a constitutional violation.") (citing *Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986)).   Plaintiff has not plausibly stated how the alleged policy violation rose to a constitutional violation.

      B.      Eighth Amendment Claims

To the extent that Shields asserts Eighth Amendment claims for transfer between multiple facilities or restricted housing, such claims fail.  Shields makes a vague allegation about her time at WGCF, claiming "the DOJ removed all male from communication with female offenders. And placed my life in danger!" Resp. [18] at 2 (unaltered).  But an Eighth Amendment claim "requires showing both that a prisoner faces conditions so dire as to deprive [her] of the minimal civilized measure of life's necessities[ ] and that the responsible prison officials were deliberately indifferent to the inmate's health or safety." *LaVergne*, 82 F.4th at 437 (internal quotation marks omitted) (citing *Farmer v. Brennan*, 511 U.S. 825, 834–36 (1994); *Wilson v. Seiter*, 501 U.S. 294, 296–303 (1991); *Hutto v. Finney*, 437 U.S. 678, 685–87 (1978)).

Plaintiff pleaded no facts suggesting that Defendants deprived her of "the minimal civilized measure of life's necessities." *Id*.  Nor does she assert any facts indicating that her life was placed in danger at WGCF.  "[V]ague and conclusory" allegations are "insufficient to establish" a § 1983 claims. *Sias v. Louisiana*, 146 F. App'x 719, 719 (5th Cir. 2005); *see Richie v. UTMB Hosp. Galveston*, No. 2:12-CV-322, 2012 WL 12871940, at *2 (S.D. Tex. Oct. 18, 2012) (finding "allegations of *potential harm* do not amount to constitutional violations"). Plaintiff has not advanced a plausible Eighth Amendment claim.

C.   Defamation Claim

If Shields intended to assert a defamation claim by saying her character was disgraced, this claim also fails. A claim based on harm to reputation, and nothing more, does not state a viable § 1983 claim. *See Collins v. Tex. Dep't of Fam. and Protective Servs.*, No. 5:19-CV-219-C, 2020 WL 421497, at *8 (N.D. Tex. Apr. 22, 2020) (dismissing defamation claim based on plaintiff's allegation of embarrassment and humiliation) (citing *Lee v. Brownfield Police Dep't*, No. 5:17-CV-40-C, 2017 WL 8790966, at *4 (N.D. Tex. Apr. 21, 2017) (deciding defamation claim failed because plaintiff's only alleged harm was to his reputation); *Bell v. Stevenson*, No. 3:06-CV-1041-G, 2006 WL 1983221, at *2 (N.D. Tex. July 17, 2006) (same); *Escamilla v. Dallas Police Dep't*, No. 3-01-CV-1159-G, 2001 WL 1338302, at *3 (N.D. Tex. Oct. 18, 2001) (same)), *report and recommendation adopted*, 2020 WL 3421883 (N.D. Tex. June 22, 2020).

D.   Leave to Amend

Ordinarily, a pro se plaintiff should be granted leave to amend her complaint prior to dismissal, but leave is not required when she has already pled her "best case." *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009). Here, Shields received a few opportunities to amend her Complaint and explain her claims. *See* Compl. [1], Am. Compl. [8], Resp. [18], and Resp. [19]. She has had sufficient opportunity to plead her best case, but the alleged facts fall short—with one exception.

Shields will be given an opportunity to file an Amended Complaint as to her allegations about her time at WGCF, specifically how her life was "in danger." Resp. [18] at 2. If she does file an amended complaint, the Court will consider if her allegations may give rise to an Eighth Amendment violation or suggest a restraint that imposes "atypical and significant hardship" that could implicate her due-process rights. *Carmouche*, 77 F.4th at 366.

IV.	Conclusion

For the reasons stated above, Plaintiff has not plausibly stated a claim for a due-process violation, Eighth Amendment violation, or other constitutional violation that would entitle her to relief under § 1983.  Her claims are dismissed as frivolous pursuant to § 1915(e)(2)(B)(i).

But Shields will be allowed to file an Amended Complaint within 14 days of this Order further detailing her time at WGCF and explaining how the conditions there amounted to constitutional violations.

- Shields must explain what exactly occurred at WGCF that "placed [her] life in danger[.]" Resp. [18] at 2.  She should provide specific examples and dates, when possible, to explain how her life was in danger.

- She previously alleged she was placed at an "all male maximum security prison . . . [w]here not only was it against ACA policy but the DOJ removed all male from communication with female offenders."  Resp. [18] at 2.  She must give more specific factual detail to explain this allegation.

- Shields mentioned being placed in a "Security Threat Group program" at WGCF. Compl. [1] at 5.  She must give more specific factual detail to explain this allegation.

If Shields fails to file an Amended Complaint by that deadline, or fails to adequately address the points listed above, the case will be dismissed without further notice.

**SO ORDERED AND ADJUDGED** this the 6th day of August, 2025.

s/ *Daniel P. Jordan III*<br>UNITED STATES DISTRICT JUDGE